CLARENCE BROWN *v.* MARYLAND CASUALTY COMPANY.

November Term, 1939.

Heard on motion for reargument and remand January Term, 1940.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 2, 1940.

Opinion on motion for reargument and remand filed February 2, 1940.

*Sylvester & Ready* for the defendant.

*F. S. Bedard, Jr.*, and *P. C. Warner* for the plaintiff.

MOULTON, C. J. This is an action upon a fidelity bond executed by the defendant company, by which it agreed to reimburse the plaintiff for loss which the latter might sustain by reason of any act or acts of fraud, dishonesty, forgery, embezzlement, wrongful abstraction or wilful misapplication on the part of B. Olin Barup while in the performance of his duties as manager of two gasoline filling stations of which the plaintiff was the proprietor. Trial was by jury, with verdict and judgment for the plaintiff and the cause is here on defendant's exceptions.

One of the express conditions of the bond, which was stated to be a condition precedent to the right of recovery thereunder, was that notice of loss should be sent by telegraph and by registered letter to the Company at its home office in Baltimore, Maryland, within ten days after discovery. By an exception taken to the denial of its motion for a verdict the defendant contends that compliance with this condition was not shown by the evidence.

Barup entered the employ of the plaintiff on or about May 10, 1937, and the bond was executed and went into effect upon that day. On July 26, the plaintiff took an inventory of the stock in the two stations, and discovered that there was a discrepancy between the merchandise on hand and that delivered to Barup, and for which he was accountable, amounting to $374.40. Upon this being called to Barup's attention, he promised to check the inventory, and later explained the situation by informing the plaintiff that there were some items not included in the inventory, and that he had sold some merchandise on credit, which had since been paid for. Within a few weeks thereafter he paid into the plaintiff's bank account the sum of $339.79, in installments. Some time after the taking of this inventory the plaintiff had a conversation with Des Rosiers, the

insurance broker who had sold the bond. The date of the interview is uncertain; according to the plaintiff it was "right away" although he could not give the day, and according to Des Rosiers it was on September 2 or 3. The plaintiff called Des Rosiers' attention to the discrepancy, or, as he put it, the "difference." Des Rosiers testified that the plaintiff told him that he wanted the matter adjusted, and this remark the plaintiff did not deny. The plaintiff also testified that he wanted "to know why it (the inventory) did not come out right," and that he did not know whether anything was wrong, but that something was wrong if it was not in balance.

On September 30 another inventory was taken, which was not figured up until four or five weeks later owing to the illness of the plaintiff's bookkeeper. This time there was a shortage of $536.61. Des Rosiers testified, and his testimony was uncontradicted, that, during the latter part of October plaintiff informed him that Barup's accounts were short, that he wanted them adjusted, and that he would be interested to have Barup or the defendant adjust them.

A third inventory was taken on November 15, which disclosed a shortage of $895.28. The plaintiff then consulted the local adjuster of the defendant and a fourth inventory was taken immediately, by which the shortage was discovered to be $976.67. Notice was sent to the home office of the defendant by registered letter on November 17, and by telegram on November 18. No previous notice had been sent.

In his testimony Barup admitted taking money from the gasoline stations. After the last inventory he was charged with embezzlement, and pleaded guilty.

 Where, as here, the contract provides that notice of loss shall be given within a certain time after discovery, the failure to do so will release the surety from the obligations imposed by the bond. *U. S. Shipping Board, etc., Corp.* v. *Aetna Cas. and Surety Co.*, 68 App. D. C. 366, 98 Fed. 2d. 238, 242; *Gentile* v. *Am. St. Bank and Trust Co.*, 315 Pa. 133, 172 Atl. 303, 305; *Planter's Svgs. Bank* v. *Am. Surety Co.*, 177 S. C. 363, 181 S. E. 222, 224. The rule in this respect is the same as in the case of an insurance contract which requires notice of accident to be given the insurer. *Houran* v. *Preferred Acc. Ins. Co.*, 109 Vt. 258, 272, 195 Atl. 253. Since the purpose of the notice is to

give the surety a reasonable opportunity to protect its rights, a delay beyond the specified time cannot be justified upon the contention that the employer had not ascertained the extent of the loss. *Jellico Grocery Co.* v. *Sun Indemnity Co.*, 272 Ky. 276, 114 S. W. 2d. 83, 86., But the employer is under no obligation to inform the surety of a mere suspicion of dishonest conduct on the part of the employee. *Perpetual Bldg. and Loan Ass'n* v. *U. S. Fidelity and Guar. Co.*, 118 Iowa 729, 92 N. W. 686, 688; *Fidelity, etc., Co.* v. *Western Bank*, 29 Ky. Law 639, 94 S. W. 3, 5; *Thomas Holme Bldg. and Loan Ass'n* v. *New Amsterdam Cas. Co.*, 124 Pa. Sup. Ct. 187, 188 Atl. 374, 376; *Inter-City Express Lines* v. *Hartford Acc. and Indemnity Co.*, La. App., 178 So. 280, 282; *Pacific Coast Adjustment Bureau* v. *Indemnity Ins. Co.*, 115 Cal. App. 583, 2 Pac. 2d. 218, 219. Apparent errors in the accounts of an employee, which do not at least imply a default, being consistent with integrity and explainable as the result of business inefficiency, do not, of themselves, necessarily call for notice to the surety. *Perpetual Bldg. and Loan Ass'n* v. *U. S. Fidelity and Guar. Co.*, supra; *Fidelity and Deposit Co.* v. *Maile*, 177 Mich. 231, 142 N. W. 1087, 1089.

In *Gilmour* v. *Standard Surety and Casualty Co.*, 292 Mass. 205, 197 N. E. 673, 676, the rule is thus given: "The contingency which made a notice necessary was not the occurrence of a loss, but rather the plaintiff's discovery of a loss which had occurred. The provision as to notice is in the interests of the surety and the language cannot reasonably be construed to mean that the giving of the notice be deferred until such time as the plaintiffs had not only discovered but were actually able to prove that loss had occurred. That would be of no benefit to the surety. * * * But discovery of loss must mean knowledge of loss, that is, knowledge derived from known facts or reasonable inferences of fact. If such facts and inferences which should reasonably be drawn therefrom would inform the ordinary man in his situation that there had been a loss, he has discovered the loss within the meaning of the bond. If such facts and inferences do no more than create in his mind a mere suspicion of loss the necessity of notice does not arise."

It cannot be said as a matter of law that the shortage disclosed by the inventory of July 26, in view of the explanation put forward by Barup, was sufficient to charge the plain-

tiff with knowledge of wrongdoing on the part of his manager, or did more than engender a suspicion in his mind. If the matter had rested here, there would have been a jury question. But an entirely different situation was presented after the inventory of September 30. It clearly appears by the testimony of Des Rosiers that, by the end of October, at least, the plaintiff knew that there was again a shortage, that he had a definite belief that there had been a misappropriation, and that he proposed to call upon the guilty party or the defendant to make good the deficit. This testimony was direct and positive, and uncontradicted by cross examination or by other testimony, facts or circumstances. The witness was credible, and it is not suggested that he had an interest in the outcome of the litigation. "The general rule is that where a credible witness testifies distinctly and positively to a fact and is not contradicted, and there is no circumstance shown from which an inference against the fact testified to can be drawn, the fact may be taken as established, and verdict directed upon the evidence. * * * And a claim by counsel that uncontradicted testimony in a case is not true does not require a submission of the case to the jury." *Neill* v. *Ward*, 103 Vt. 117, 160, 153 Atl. 219, 238.

It may be that the inventory had not then been figured so that the exact amount of the shortage could not have been known, but, as we have seen, the event that gives rise to the obligation to notify the surety is the discovery of the loss, not the ascertainment of the extent of it. The resulting figures of the inventory of September 30, and of the succeeding inventories in November served only to give information of the latter sort. The discovery of the loss, within the meaning of the bond, occurred before the end of October. The notices, sent on November 17 and 18, were not in compliance with the terms of the contract. It was error to deny the motion for a verdict.

What has been said makes the discussion of the other exceptions academic only, and no attention need be given them.

*Judgment reversed and judgment for the defendant to recover its costs.*

### On Motion for Reargument and Remand.

After the foregoing opinion was handed down the plaintiff asked and obtained leave to file a motion for reargument and for a remand. The motion has been argued and briefs have been presented by both parties. Two grounds are assigned in support of the motion for reargument.

First. It is asserted that, in disposing of the motion for a directed verdict, we have overlooked certain evidence to the effect that on November 15, at the time of taking the third inventory, the plaintiff paid to Barup the latter's salary, amounting to $247.50. It is argued that this circumstance raises an inference that the plaintiff had not then discovered the wrongdoing on the part of his employee. The evidence did not pass unnoticed, but, in view of the uncontradicted testimony that the plaintiff had made the discovery by the end of October, the probative effect of whatever inference might be drawn therefrom was, and is, considered to be of insufficient character to justify the jury, acting reasonably, to predicate a verdict thereon in favor of the party having the burden of proof, in accordance with the rule announced in *Wellman, Admr.* v. *Wales*, 98 Vt. 437, 448, 129 Atl. 317.

Second. It is claimed that there was evidence tending to show that the defendant had waived the requirement of notice, or was estopped from asserting it, which was not given attention in the consideration of the motion for a verdict. But, when the case was heard, no mention of this evidence as bearing upon the motion was made either in the brief of the plaintiff, or in the argument in his behalf. The point is now presented for the first time in this connection. "A rehearing is not granted for the purpose of affording opportunity to present new questions * * *. And where there was occasion and opportunity for raising the point at the hearing, the rule applies equally to one not the excepting party. * * * When, as in this case, a voluminous transcript is made the record, failure to point out in the brief or argument the evidence relied upon places an unnecessary burden on the Court of searching for evidence to support the judgment. Indeed, our rule so often announced, does not require the Court to search the transcript to see if anything can be found to support the judgment." *Ryan* v. *Orient Ins. Co.*, 96 Vt. 291,

305, 306, 119 Atl. 423, 429. See, also, *Spaulding* v. *Mut. Life Ins. Co.,* 94 Vt. 42, 54, 109 Atl. 22; *Hawkins* v. *Wilson,* 94 Vt. 417, 419, 420, 111 Atl. 634.

██ Although it is admitted that the question of waiver or estoppel was not called to our attention as a reason why the ruling on the motion for a verdict should be upheld, we are asked to strike off the entry of final judgment and to remand the cause since the issue was raised on the trial below. It is well established that we have the discretionary power to remand a cause to prevent a failure of justice when the circumstances warrant such action, even when the record discloses error of such a nature as to justify the entry of final judgment here. *Shea* v. *Pilette,* 108 Vt. 446, 455, 189 Atl. 154, 109 A. L. R. 933.

The evidence which the plaintiff presents as tending to show waiver or estoppel includes a series of letters written by the defendant, or its agent, to the plaintiff. On November 17, 1937, the assistant manager wrote: ''If this principal has been guilty of any offenses coming within the terms of our contract, please fill out the attached Proof of Loss in triplicate, returning three copies to this office. Please set out each item, showing its dates, and amount, and attach whatever substantiating evidence you have to the Proof of Loss.'' On November 30, the attorney for the defendant wrote to the attorneys for the plaintiff, suggesting that inasmuch as the claim had previously been reported to the defendant's local representative, R. V. Denault, who had submitted the form for the Proof of Loss, further correspondence should be handled direct with him. On December 27, Denault wrote to the plaintiff, ''Under full reservation of all our rights and defenses, we are returning to you the three Proof of Loss forms which you submitted in connection with this case. These Proof of Loss forms have not been filled out sufficiently to comply with the terms of the bond. It will be necessary for you to list the items of default, showing the dates and amounts. For your convenience we are enclosing three blank Proof of Loss forms. We are retaining the copies of the inventories which you submitted with your Proof of Loss, but these inventories are not sufficient to make out a claim within the terms of our contract. We call your attention to Clause 6 of your bond and ask you to comply therewith without further delay.'' Clause 6 provided that ''should the employee become guilty of any

criminal offense covered by this bond, the Employer shall immediately, on being requested by the company so to do, lay proper information before an officer or other body having authority to issue warrant for the arrest of the Employee, and verify the same as required by law, and furnish the company every aid and assistance (not pecuniary) that can be rendered by the Employer, his agents or servants, in the apprehension and prosecution of the Employee.'' The plaintiff complied with this clause, by placing the matter before the states attorney who issued the necessary complaint and warrant and proceeded with the prosecution which ended with a plea of guilty by the respondent Barup. On January 19, 1938, Denault wrote to the plaintiff stating that ''we have carefully gone over the information which you have submitted to us in connection with the above captioned bond and have also made a complete investigation concerning the circumstances surrounding this matter. Under the terms of the contract in force, it is necessary that we receive prompt notice of claim, and because this man's accounts were out of balance quite some time, and that fact was not called to our attention, we feel that there has been substantial delay * * *. We are therefore unable to honor your claim for the above and other reasons.''

These letters evidence no intention on the part of the defendant to surrender any defense to which it might be entitled. See *Houran* v. *Preferred Acc. Ins. Co.*, 109 Vt. 258, 267, 195 Atl. 253. In calling upon the plaintiff to present proof of loss and to inform the proper authority that a misappropriation had taken place the defendant acted within the express terms of the bond and its course of conduct was not such as to give the plaintiff the right to rely on it as giving him a just and reasonable ground to infer that the defense here interposed would not be asserted. *Crosby* v. *Vermont Acc. Ins. Co.*, 84 Vt. 510, 513, 514, 80 Atl. 817.

We find the claims of waiver and estoppel unsupported by the evidence called to our attention, and consider it unnecessary under the circumstances to remand the cause.

*Motion for reargument and remand denied. Let full entry go down.*